# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DUANE SAIN,

      Petitioner,                Civil No. 2:13-CV-10824
                                     HONORABLE VICTORIA A. ROBERTS
v.                              UNITED STATES DISTRICT JUDGE

S.L. BURT,

      Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION FOR AN EVIDENTIARY HEARING AND FOR THE APPOINTMENT OF COUNSEL, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Duane Sain, ("Petitioner"), confined at the Richard A. Handlon Correctional

Facility in Ionia, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree premeditated

murder, M.C.L.A. 750.316(1)(a).

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

A jury convicted Petitioner in Wayne County Circuit Court. Petitioner was tried

jointly with co-defendant Mark DeWitt Yancey.

On May 20, 2009, Brandon Williams was shot and killed near Stout Street and

Wadsworth Avenue in Detroit. (Tr. 2/25/10, pp. 125-26). Michael Porter testified that he,

Daniel Hines or "Travon" Williams, and a man identified only as "C.J." were together at

1

this location earlier that day.  An argument broke out around 4:00 or 5:00 p.m. between a group of young men from Vaughn Street and another group of men from Stout Street concerning stolen narcotics.  Porter knew Petitioner as "D.J." and his co-defendant as "Monte"; they were from the gang on Vaughn Street.  Hines and C.J. were part of the group from Stout Street.  Hines and C.J. got into an argument with Petitioner and Yancey. The argument broke up when someone started shooting a gun in the air. (Tr. 2/25/10, 158-166; Tr. 03/1/10, pp. 24-25, 27).

Porter returned to Stout Street after dark, where he met up with C.J., Williams, and Hines.  At approximately 11:20 p.m., the men were walking down Stout Street when the second shooting occurred.  Porter testified that Petitioner and Yancey pulled up in Petitioner's burgundy Chevy Caprice.  Porter testified that he recognized the car because the front passenger side was damaged and the hood was black.  Porter saw Petitioner drive that car before.  The car approached slowly and passed under a streetlight; Porter saw Petitioner driving.  Yancey was in the front passenger seat, holding a black Luger handgun.  Porter ran when Yancey started shooting.  Porter heard someone in the car shout "Black Pointe," the name associated with the gang on Vaughn Street.  Porter observed Hines running ahead of him.  Williams stated "I'm hit," and held his chest. Williams made it to Wadsworth before falling. Hines and Porter tried to help Williams and also called 911.  The ambulance and police arrived.  Williams was taken to the hospital. (Tr. 2/25/10, pp. 169-75, 178-90, 196-97).

Mr. Hines also testified that there had been an argument over stolen drugs on Stout

2

Street earlier that day that ended with gunshots. (Tr. 3/1/10, pp. 63, 66-68, 95-96). Later that night, Hines was walking with Williams, Porter, and C.J. near Wadsworth and Stout when he noticed a brown Chevy Caprice approach them from behind and speed up. Hines heard eight or nine gunshots. The car did not have its headlights on. Hines believed the streetlight, which blinked on and off, was off at that point. Hines did not see who was driving, but the gunshots came from the front passenger side. (Tr. 3/1/10, 61-63, 66-71, 76-78, 95-96, 105). Hines testified that Porter and C.J. ran ahead of him and Williams. Hines saw Williams fall. Hines and Porter attempted to help Williams. (*Id.*, pp. 80-82, 106-107).

Detroit police investigated the crime scene. Officer Robert Skender testified that the gunshots came from the east on Stout Street. (Tr. 2/25/10, 144). Officer Skender indicated that the streets were lit but that it was it was dark outside along Wadsworth. Officer Skender testified that the light was poor at the corner of Stout and Wadsworth Streets and he had to use a flashlight. (*Id.*, pp. 150-52). Police found 16 .9-millimeter bullet shell casings, a red baseball cap, a bullet impact mark on a house nearby, a T-shirt, and a cellular telephone. The bullet casings were from three different manufacturers and were found all along the curb on Stout Street between Wadsworth and Plymouth. (Tr. 3/1/10, pp. 135-138, 140-143). Detroit Police Officer Michael Martell believed there was a street light near where the shell casings were recovered. (*Id.,* pp. 149-50). The Michigan State Police Department firearms expert determined that the casings came from two different guns. (Tr. 3/2/10, pp. 16-17, 28-29).

3

Porter did not initially contact the police because he was nervous, but he identified the shooter and driver to his mother. (Tr. 2/25/10, pp. 192, 195; Tr. 3/1/10, 39). Porter eventually met with the police on June 6, 2009. Porter gave a statement and identified Petitioner and Yancey in photographic lineups. (Tr. 2/25/10, pp. 192-94, 200; Tr. 3/1/10, pp. 8-10; 39; Tr. 3/2/10, pp. 36, 78-79). Police also located the brownish burgundy Caprice with a black hood and front end damage. (Tr. 3/2/10, pp. 46-47).

Detroit Police Sergeant Gary Diaz located Hines in September 2009. Hines initially denied being a witness to the shooting until he was shown Porter's statement. (Tr. 3/1/10, p. 110; Tr. 3/2/10, pp. 37-38). Diaz then took a statement from Hines; Diaz did not include anything in the written statement that Hines did not tell him. Hines told Diaz that he saw Petitioner's Caprice. (Tr. 3/2/10, p. 39-40). Hines testified that he saw Petitioner drive the Caprice on a prior occasion before the shooting, but saw others drive the car. (Tr. 3/1/10, pp. 82, 85-86, 94, 120-121). Hines felt pressured to identify the car. (*Id.*, p. 99). Hines did not see who was driving or shooting on that day. (*Id.*, p. 86). Hines told Diaz that he did not want to come to court and testify. (*Id.*, p. 112).

Petitioner's conviction was affirmed on appeal. *People v. Sain*, No. 297268, 2011 WL 3518212 (Mich. Ct. App. Aug. 11, 2011); *lv. den.* 490 Mich. 973, 806 N.W. 2d 327 (2011).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that Petitioner could return to the state courts to exhaust additional claims. *Sain v. Romanowski*, No. 2:13-CV-10824, 2013 WL 1176072 (E.D. Mich. Mar. 21, 2013).

4

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Sain,* No. 09-024170-FC (Third Circ.Ct. Mar. 11, 2014). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Sain,* No. 323497 (Mich.Ct.App. Nov. 14, 2014); *lv. den*. 498 Mich. 883, 869 N.W.2d 578 (2015).

On December 15, 2015, this Court granted Petitioner's motion to lift the stay and to amend his petition. Petitioner seeks habeas relief on the following grounds: (1) the trial judge committed reversible error in admitting hearsay evidence under the residual hearsay rule; (2) prosecutorial misconduct; (3) insufficient evidence; (4) improper jury verdict form; (5) newly discovered evidence of innocence; (6) criminal complaint and warrant violated the Fourth Amendment; (7) ineffective assistance of trial counsel; and (8) ineffective assistance of appellate counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the

5

evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a

6

strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.

### III. Discussion

**A.  Claim # 1.  The improper hearsay evidence claim.**

Petitioner claims that the trial judge improperly admitted hearsay evidence under the residual hearsay rule under the guise of impeachment evidence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

7

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x. 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). The admission of this evidence in violation of Michigan's rules of evidence would not entitle Petitioner to relief.

### B. Claim # 2. Prosecutorial misconduct.

Petitioner claims that he was denied a fair trial because of prosecutorial misconduct.[1]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at

---

[1] Respondent argues that a portion of Petitioner's prosecutorial misconduct claim is procedurally defaulted because he failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's claim is without merit; it is easier to reach the merits of the claim.

8

643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas

petitioner must show that the state court's rejection of his prosecutorial misconduct claim

"was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner argues that the prosecutor improperly appealed to the sympathy of the

jurors in her opening and closing arguments.

The prosecutor's comments, even if they were an attempt to invoke sympathy

with the jury, would not entitle Petitioner to habeas relief because the remarks were

relatively isolated, were not extensive, and were only a small part of the opening and

closing arguments that focused on summarizing the evidence. *Byrd v. Collins,* 209 F. 3d

486, 532 (6th Cir. 2000).

Petitioner argues that the prosecutor vouched for the credibility of Michael Porter

and Sergeant Diaz.

A prosecutor may not express a personal opinion concerning the guilt of a

defendant or the credibility of trial witnesses, because such personal assurances of guilt

or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate

advocates' role by improperly inviting the jurors to convict the defendant on a basis

other than a neutral independent assessment of the record proof." *Caldwell v. Russell*,

181 F.3d 731, 737 (6th Cir.1999)(internal citations omitted).  However, a prosecutor is

free to argue that the jury should arrive at a particular conclusion based upon the record

9

evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). The Sixth Circuit never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Petitioner points to the prosecutor's comment: "What reason does [Porter] have to lie?" The Michigan Court of Appeals rejected this claim:

> Here, the prosecutor was not implying that she had some special knowledge that the jury was not aware of, nor did this comment place the prestige of the prosecutor's office behind the witness's testimony. This is not an argument that the prosecutor knows Porter is not lying, but simply an invitation to the jury to assess what motivation Porter would have to lie. Thus, this prosecutor comment during closing argument was not improper.
>
> *People v. Sain*, 2011 WL 3518212, at * 2.

A prosecutor does not engage in vouching by arguing that his or her witnesses have no reason or motivation to lie, when such comments are based on the evidence and

do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 F. App'x. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 F. App'x. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie). The prosecutor's remarks were not improper.

Petitioner contends that the prosecutor improperly vouched for Sergeant Diaz by stating that the officer's "purpose is to state the truth." The Michigan Court of Appeals agreed that the prosecutor's remark was questionable, but noted that the trial judge sustained defense counsel's objection to this statement and "immediately instructed the jurors to 'make up their own decision regarding the credibility of each witness.'" *People v. Sain*, 2011 WL 3518212, at * 3. The Michigan Court of Appeals further noted that at the conclusion of the trial, the judge instructed the jurors that any comments by the attorneys were not to be considered as evidence and should only be accepted if they were supported by the evidence or by common sense. *Id.,* n. 4.

An "on-the-spot curative instruction" by a trial court judge can make a difference in preventing improper prosecutorial argument or remarks from rendering a trial fundamentally unfair. *See Brown v. Palmer,* 358 F. Supp. 2d 648, 658 (E.D. Mich.

11

2005). Here, the judge in the jury's presence basically indicated that it was improper for the prosecutor to make these remarks. Moreover, the trial court instructed the jury after closing arguments that the lawyers' arguments and statements were not evidence. Accordingly, the prosecutor's remarks about counsel did not deprive Petitioner of a fair trial. *Id.*

Petitioner finally points to the following comments made by the prosecutor during rebuttal:

> But what Sergeant Diaz did do[—]and he told you he has[—] he took statements from six or seven people who say that was Duane Sain's car. Counsel wants you to ignore it and say six, seven, eight, ten people[—]so what[?] How many people does it need to be? Those people have no reason to lie on this defendant.

The Michigan Court of Appeals rejected Petitioner's claim, finding that the prosecutor's remarks were proper because they were made "in direct response to defense counsel suggesting that Sergeant Diaz's reliance on the mere statements of others, as the basis to identify Sain as the vehicle's owner, is suspect and should not be given much weight by the jury." *People v. Sain*, 2011 WL 3518212, at * 3.

Courts recognize that the "prosecution has "wide latitude" during closing arguments to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F. 3d 225, 233 (6th Cir. 2009). The prosecutor's remarks were proper because they were responsive to defense counsel's closing argument. Petitioner is not entitled to relief on his second claim.

**C.  Claim # 3.  The sufficiency of evidence claim.**

12

Petitioner claims there was insufficient evidence to convict him of first-degree murder under an aiding and abetting theory.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that

13

they must nonetheless uphold." *Id.*  Therefore, for a federal habeas court reviewing the sufficiency of evidence for a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

The Michigan Court of Appeals rejected Petitioner's argument that there was insufficient evidence of premeditation and deliberation:

> Two eyewitnesses testified that defendants were part of a group that got into an argument with Williams during the day on May 20, 2009.  Later that night, when it was dark outside, Porter saw a car, driven by Sain, approach slowly before the passenger fired a gun out of the window.  Hines testified that the car also had its headlights off.  At the time of the shooting, Porter heard someone yell "black point," which he identified as a reference to the "gang" associated with defendants' neighborhood.  Viewing this evidence in a light most favorable to the prosecution shows that there was sufficient evidence for a jury to conclude beyond a reasonable doubt that the shooting was premeditated and deliberate.

> *People v. Sain*, 2011 WL 3518212, at * 4.

The Michigan Court of Appeals also rejected Petitioner's claim that there was insufficient evidence to convict him on an aiding and abetting theory:

> As noted above, two witnesses testified that the car drove deliberately toward a group of four individuals.  Porter specifically testified that Sain was driving the car.  This is evidence that Sain was deliberately aiding the shooter.  It is difficult to understand how Sain would not be willfully at the scene if he was driving the vehicle that brought them to the scene.  Moreover, the prosecutor is not required to prove a negative—that Sain did not try to stop Yancey.

> *Id.*, at * 5.

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v.*

14

*Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158;

486 N.W.2d 312, 318 (1992)).  The elements of premeditation and deliberation may be

inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F.

Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*, 209 Mich. App. 527,

537; 531 N. W. 2d 780 (1995)).  Premeditation may be established through evidence of

the following factors:

> 1. the prior relationship of the parties;
> 2. the defendant's actions before the killing;
> 3. the circumstances of the killing itself;
> 4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App.
at 527.

Although the minimum time required under Michigan law to premeditate "is

incapable of exact determination, the interval between initial thought and ultimate action

should be long enough to afford a reasonable man time to subject the nature of his

response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-95 (E.D.

Mich. 2002)(quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A

few seconds between the antagonistic action between the defendant and the victim and

the defendant's decision to murder the victim may be sufficient to create a jury question

on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d at 663.  "[A]n opportunity

for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon

the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at

596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)).  Premeditation and

15

deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(*citing People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of

aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424.  "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt.  In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the

17

circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. at 754 (internal citation omitted).

There was sufficient evidence for a rational trier of fact to conclude that the co-defendant and Petitioner acted with premeditation and deliberation.  Petitioner and the co-defendant had argued earlier in the day with the victim and his associates.  Evidence that Petitioner and the co-defendant had a prior dispute with the victim supports a reasonable inference that the subsequent shooting was premeditated. *Scott,* 302 F. 3d at 603.  The fact that the victim was shot during a drive-by shooting also supported an inference of premeditation and deliberation. *See e.g. Puckett v. Costello,* 111 F. App'x. 379, 383-84 (6th Cir. 2004).  There was also testimony that multiple shots were fired, which would also be sufficient to establish premeditation and deliberation. *See Crawley v. Curtis*, 151 F. Supp. 2d 878, 888-89 (E.D. Mich. 2001).  There was sufficient evidence of premeditation and deliberation to sustain the first-degree murder conviction.

Moreover, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict Petitioner of first-degree murder on an aiding and abetting theory. *See Brown v. Konteh,* 567 F. 3d 191, 209-12 (6th Cir. 2009).  When Petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision that there was sufficient evidence to convict

18

Petitioner under an aiding and abetting theory was "so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting [petitioner] habeas relief." *Davis v. Lafler*, 658 F. 3d 525, 535 (6th Cir. 2011).

Finally, to the extent that Petitioner is attacking the credibility of the witnesses to claim that the evidence is legally insufficient, he would not be entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002)(internal citation omitted).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*  This portion of Petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the jury; Petitioner is not entitled to habeas relief on such a claim. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

### D.  Claim # 4.  The improper jury verdict form claim.

Petitioner claims that the verdict form was flawed because it did not provide an option of not guilty on the lesser included offense of second-degree murder nor did it provide a general verdict of not guilty.  The jury form was not a model of clarity.  It contained three options: (1) Not Guilty of 1st Degree Murder; (2) Guilty of 1st Degree Murder; and (3) Guilty of lesser offense of 2nd Degree Murder.  The judge instructed the

19

jurors that they could find Petitioner not guilty on both the original first-degree murder

charge and the lesser included charge of second-degree murder:

> For the defendant Duane Sain you may return a verdict of guilty of the alleged
> crime of homicide murder first degree premeditated or not guilty.
>
> You may also consider the lesser included offense of homicide murder second
> degree and return verdicts of either guilty or not guilty to that lessor included
> offense.
>
> (Tr. 3/2/10, p. 158).

The Michigan Court of Appeals reviewed Petitioner's claim for plain error

because Petitioner failed to object to the verdict form. *People v. Sain*, 2011 WL

3518212, at * 3.  The Michigan Court of Appeals rejected Petitioner's claim:

> The verdict form in the present case is similar to the one used in *People v.
> Wade*, 283 Mich.App 462; 771 NW2d 447 (2009).  Here, the verdict form for
> count 1 allowed for a return of (a) not guilty of first-degree murder, (b) guilty
> of first-degree murder, or, on the lesser-included offense, (c) guilty of
> second-degree murder.
>
> In *Wade*, this Court ordered a new trial where there was no opportunity to
> return a general not guilty verdict and the jury convicted the defendant of a
> lesser-included offense. *Id*. at 465–468.  That case is factually distinguishable
> because the juries in this case convicted defendants of the highest offense,
> first-degree murder, for which there was an option to check guilty or not
> guilty on the verdict form.  Thus, because the jurors found that the elements
> of first-degree murder were met beyond a reasonable doubt, the fact that there
> were some errors related to the lesser-included charges is of no consequence.
> As a result, while it was erroneous for the verdict form not to allow for a
> general verdict of not guilty, this error did not affect defendants' substantial
> rights because the crime they were convicted of did allow for a return of not
> guilty.  Accordingly, defendants cannot prevail on their plain-error claim.

*Id.*

"In a federal habeas action, errors in jury instructions are generally not cognizable unless they deprive petitioner of a fundamentally fair trial." *Weese v. Turner*, 187 F. 3d 639, 1999 WL 427151 at *3 (6th Cir. June 15, 1999)(Table)(citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F. 2d 548, 551-52 (6th Cir. 1986)).  To obtain federal habeas relief on an instructional error claim, a petitioner must demonstrate that the error violated a federal constitutional right. *Id.* (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  The issue in not whether the verdict form was undesirable or erroneous under Michigan law, but rather whether the verdict form, by itself, so infected the entire trial that the resulting conviction violated due process. *Id.*

"Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations if they are not objected to at trial." *Weese v. Turner*, 1999 WL 427151 at * 3 (citing *Engle v. Isaac*, 456 U.S. 107 (1982)).  Petitioner did not object to the jury verdict form at trial.

Although the verdict form was defective, Petitioner has not demonstrated a due process violation.  The jury found Petitioner guilty of first-degree murder; thus, the lack of a not guilty box for the lesser offense of second-degree murder was of no consequence and did not deprive Petitioner of a fair trial.

The jury was correctly instructed on how to proceed with deliberations with respect to the first-degree murder charge and the lesser offense of second-degree murder.

21

The jury found Petitioner guilty of first–degree murder. "There is no reason to believe that the jury even had occasion to refer" to the lesser offense of second-degree murder after concluding that Petitioner was guilty of first-degree murder; the lack of a not guilty box for the lesser included offense of second-degree murder did not deprive Petitioner of a fair trial. *Weese v. Turner*, 1999 WL 427151 at * 3. Petitioner is not entitled to habeas relief on his fourth claim.


### E. Claim # 5. The newly discovered evidence claim.

Petitioner argues that he has newly discovered evidence of actual innocence. [2]

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are thus not cognizable on

---

[2]  Respondent argues that Petitioner's remaining claims are procedurally defaulted because he failed to properly exhaust these claims. Respondent argues that Petitioner's post-conviction claims were not exhausted because he did not raise these individual claims in the headings or statement of questions that he raised in his post-conviction appellate brief before the Michigan appellate courts. Petitioner, however, raised these substantive claims in the body of his appellate court briefs. This would be sufficient to present these claims to the Michigan appellate courts for exhaustion purposes. *See Wade v. Romanowski*, No. 13-2073, * 4 (6th Cir. Apr. 8, 2015).

federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases). Petitioner is not entitled to relief for his claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 F. App'x. 709, 711 (6th Cir. 2007).

### F. Claim # 6.  The Fourth Amendment claim.

Petitioner contends that the criminal complaint and arrest warrant violated the Fourth Amendment because they were not supported by sworn affidavits from the witnesses.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See*

23

*Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).

Petitioner raised his Fourth Amendment claim in his post-conviction motion; Petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts. *See Villafuerte v. Stewart,* 111 F. 3d 616, 627 (9th Cir. 1997). Petitioner is not entitled to habeas relief on his claim.

### G. Claims # 7 and # 8. The ineffective assistance of counsel claims.

Petitioner alleges the ineffective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at

24

694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a

25

*Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner contends that trial counsel was ineffective for failing to call Ms. Tasia Monique Jackson, Ms. Daisha Sain, Ms. DeVonne Alesha Sain, Ms. Shanay Rogers-Watkins, and perhaps two other persons, Mr. Tobias Moore and Ms. Walterina Jackson, as alibi witnesses.

Petitioner only filed two affidavits with the post-conviction motion for relief from judgment that he filed with the trial court. The first affidavit was signed by Ms. Rogers-Watkins on March 14, 2013. Ms. Rogers-Watkins avers that she witnessed the shooting, but that Petitioner was neither the shooter, nor was he the driver of the vehicle used during the shooting. Ms. Rogers-Watkins claims that if she is called before a judge, she will reveal the identity of the shooter. Neither Petitioner in his petition, nor Ms. Rogers-Watkins in her affidavit, indicate that trial counsel knew that Ms. Rogers-Watkins was a proposed witness to the crime. Petitioner's sister, Ms. DeVonne Alesha Sain, signed an affidavit dated May 1, 2013, in which she claims that Mr. Hines told her that Petitioner was not the driver of the car and that he was willing to sign an affidavit to that effect. [3]

---

[3] The affidavits are attached to the post-conviction motion for relief from judgment. [This Court's Dkt. # 15-13].

Petitioner also provided the Court with several additional affidavits that he did not present to the trial court as part of his motion for relief from judgment, but only filed for the first time in his post-conviction appeal with the Michigan Court of Appeals. One of the affidavits is a second affidavit from Ms. DeVonne Sain, dated August 20, 2014, in which Ms. Sain for the first time claims that Petitioner was with her in Taylor, Michigan on the night of the shooting. Ms. Sain also claims in this second affidavit that she will reveal the name of the real shooter, but does not name this person in the affidavit. Tobias Moore signed an affidavit dated April 14, 2014, in which he claims that Petitioner was not the driver of the vehicle used in the shooting, although Mr. Moore does not explain where he was at the time of the shooting. Mr. Moore identifies Mr. Ester as the real shooter. Ms. Daisha Sain signed an affidavit dated August 19, 2014, in which she claims that Petitioner was with her and her sister DeVonne on the night in question. Ms. Walterina Jackson signed an affidavit dated April 3, 2014, in which she claims that Petitioner was not the shooter and that the car that the shots came from was not Petitioner's vehicle.

With the exception of Ms. Rogers-Watkins' affidavit and Ms. DeVonne Sain's first affidavit, none of the other affidavits was presented to the trial court as part of the motion for relief from judgment. The state trial court was the last state court to adjudicate Petitioner's ineffective assistance of trial counsel claim on the merits, since the Michigan appellate courts denied Petitioner leave to appeal pursuant to M.C.R.

6.508(D), which would be considered an unexplained order. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  The United States Supreme Court held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* precludes the Court from considering the four affidavits that Petitioner failed to present to the state trial court in considering Petitioner's ineffective assistance of trial counsel claim. *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

More importantly, none of the affidavits, including the ones that were not properly presented to the state courts, establishes trial counsel's ineffectiveness.

First, Petitioner was convicted on March 3, 2010, but the earliest affidavit is signed and dated March 14, 2013, some three years later.  The other affidavits were not signed until even later, in 2014.  The fact that none of these witnesses came forward in a timely manner, when they claimed that they knew that Petitioner "had been wrongly convicted and was languishing in prison," undermines their credibility, particularly when there is also no indication that these proposed witnesses went to the police with their allegedly exculpatory information. *See Ashmon v. Davis*, 508 F. App'x. 486, 488 (6th Cir. 2012).  Many of these proposed witnesses' credibility are suspect for other reasons. Ms. DeVonne Sain does not indicate in her second affidavit why she failed to mention in

her first affidavit that Petitioner was with her at the time of the shooting.  Ms. DeVonne Sain and Ms. Rogers-Watkins claim they know who the real shooter is but refused to reveal his identity in their affidavits.  Mr. Moore and Ms. Walterina Jackson offer no explanation where they were at the time of the shooting and how they could observe the events.  Petitioner's proposed witnesses would have most likely been impeached had they testified; trial counsel was not ineffective for failing to call them as alibi witnesses. *See United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995).

Trial counsel was not ineffective for failing to call Ms. Rogers-Watkins because there is no indication that counsel was aware that Ms. Rogers-Watkins was a witness to the crime or was willing to testify on Petitioner's behalf.  A trial attorney is not ineffective for failing to call witnesses whom he or she is unaware of. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013); *See also Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004)  "Counsel cannot be expected to interview unknown witnesses." *Ballinger,* 709 F. 3d at 563.  In the absence of any allegation or evidence that trial counsel was informed about Ms. Rogers-Watkins, the state court's rejection of this portion of Petitioner's ineffective assistance of counsel claim was not unreasonable. *Id.*

The Court further notes that Ms. Daisha Sain and Ms. DeVonne Sain are Petitioner's sisters and Ms. Tasia Monique Jackson is Petitioner's cousin.  Petitioner claims that trial counsel did not call these women as witnesses because they are related to Petitioner.  Counsel could have reasonably concluded that these three women would

29

not have been credible alibi witnesses because they were related to Petitioner. *See*

*Stadler v. Berghuis,* 483 F. App'x. 173, 176-77 (6th Cir. 2012).

Finally, although counsel did not call any witnesses, she vigorously challenged

the prosecution's case.  Counsel obtained admissions from Mr. Porter on cross-

examination that he discussed his testimony with Sergeant Diaz prior to both the

preliminary examination and trial. (Tr. 3/1/10, pp. 13-14).  Although Mr. Porter testified

on direct examination that Petitioner was the person who yelled out "Black Pointe," on

cross-examination he admitted he did not know who yelled this out. (*Id.,* pp. 38-39).  Mr.

Porter admitted that he did not testify truthfully at the preliminary examination. (*Id.,* p.

45).  Mr. Porter also admitted that much of the information he had concerning Petitioner

had been provided to him second-hand. (*Id.,* p. 49).  Counsel obtained admissions from

Mr. Hines that he did not see who was in the car, let alone who did the shooting.  Hines

also testified that he felt pressured by Sergeant Diaz into saying that the car used in the

shooting belonged to Petitioner. (*Id.,* p. 99).  Hines also testified that he did not see the

co-defendant in the car that night. (*Id.,* pp. 105-06).  Counsel obtained an admission from

Sergeant Diaz that he did not do any follow up investigation to corroborate that

Petitioner's vehicle was the one used in the shooting.  Sergeant Diaz admitted that no

tests were done on Petitioner's vehicle to determine whether gunshot residue was

present. (Tr. 3/2/10, pp. 55-56).  Sergeant Diaz admitted that he might have shown Mr.

Hines his prior statement before Hines testified. (*Id.,* p. 84).

30

Counsel's failure to call alibi witnesses to testify at Petitioner's trial was a matter of reasonable trial strategy; it did not constitute ineffective assistance of counsel. Counsel instead chose to rely on discrediting the prosecution's witnesses by challenging the strength of their credibility and/or identification of Petitioner as one of the perpetrators. *See Hale v. Davis*, 512 F. App'x. 516, 521-22 (6th Cir. 2013). Indeed, "[T]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates. All that happened here is that counsel pursued a course that conformed to the first option ... In light of the record here there was no basis to rule that the state court's determination was unreasonable." *Id.* (quoting *Richter*, 131 S. Ct. at 790)).

Petitioner next claims that trial counsel was ineffective for failing to present evidence to show that the street lights were not working in the crime scene area. At least two police officers, however, testified that the lighting in the area was poor. (Tr. 2/25/10, p. 151; Tr. 3/1/10, p. 139). Counsel brought up the poor lighting conditions in her closing argument. (Tr. 3/2/10, p. 128-30). Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial.*" Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009)(quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)). Additional evidence concerning the lighting conditions at the crime scene would have been cumulative to evidence presented at trial;

31

Petitioner was not prejudiced by counsel's failure to introduce cumulative impeachment evidence. *Id.*

Petitioner argues that trial counsel was ineffective for failing to introduce photographs of Petitioner's car, to contradict the witnesses' description of the car used in the shooting.  Hines testified that he felt pressured by Sergeant Diaz into saying that the car used in the shooting belonged to Petitioner.  Counsel obtained an admission from Sergeant Diaz that he did not make any attempt to corroborate that Petitioner's car was the one used in the shooting.  Sergeant Diaz admitted that no tests were done on Petitioner's car to see if gunshot residue was present.  As mentioned above, counsel emphasized the poor lighting conditions.  Photographs of Petitioner's vehicle would have been cumulative; counsel was not ineffective for failing to present this evidence.

Petitioner claims that trial counsel was ineffective for failing to challenge the criminal complaint or arrest warrant.

"An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980)(citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); See also *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886).  The Supreme Court held that "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v.*

32

*Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews*, 445 U.S. at 474.

Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest.  Thus, the mere fact that Petitioner may have been arrested without probable cause or improperly arraigned would not prevent him from being prosecuted and convicted of this offense.  Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *See Goldsby v. U.S.,* 152 F. App'x. 431, 438 (6th Cir. 2005).  A challenge to the legality of Petitioner's arrest would not have resulted in his release from custody.  Counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F.Supp. 2d 725, 738-39 (E.D. Mich. 2002).

In his eighth claim, Petitioner alleges that he was denied the effective assistance of appellate counsel for failing to raise his fifth through seventh claims on his direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).

33

However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner's fifth through seventh claims are without merit. Appellate counsel was not ineffective for failing to raise these claims on Petitioner's direct appeal.

### H.  The motion for an evidentiary hearing and for the appointment of counsel.

Petitioner filed a motion for an evidentiary hearing and for the appointment of counsel.

A habeas petitioner is not entitled to an evidentiary hearing on claims that lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). A habeas petitioner's request for the appointment of counsel should also be denied if the petition is without merit. *See Lemeshko v. Wrona,* 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004). Petitioner's claims are without merit; the motion for an evidentiary hearing and for the appointment of counsel is denied.

### IV.  Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a

34

prisoner must make a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that

reasonable jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the

petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The

district court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. §

2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of

appealability; he failed to make a substantial showing of the denial of a federal

constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting

an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for

certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D.

Mich. 2002).  While a certificate of appealability may only be granted if petitioner makes

a substantial showing of the denial of a constitutional right, a court may grant IFP status

if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. §

1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  <u>ORDER</u>

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

**The Court DENIES** the Motion for An Evidentiary Hearing and For the Appointment of Counsel. [Dkt. # 18].

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

<u>S/Victoria A. Roberts</u>
**HON. VICTORIA A. ROBERTS**

**Dated: 9/30/2016**            **UNITED STATES DISTRICT JUDGE**

36